A. J. Geiger *v.* The President, Managers and Company of The Perkiomen & Reading Turnpike Road., Appellants.

*Turnpike roads—Tolls—Bicycles—Act of March 25, 1805.*

A bicycle is a two wheel carriage within the meaning of the act of March 25, 1805, P. L. 137, and as such subject to tolls on a turnpike road.

A charge of one cent per mile for a bicycle on a turnpike road is not an unreasonable charge.

*It seems* that a turnpike road company has a right to demand reasonable tolls for all vehicles passing over its road, even though the act by which it is incorporated does not in express terms confer such right.

*Doubted,* whether, without express authority from the legislature, the managers of a public highway can lawfully so discriminate between vehicles using it as to exempt wholly one class of carriages from the tolls which it imposes on all other carriages.

Argued March 8, 1895.   Appeal, No. 291, Jan. T., 1895, by defendants, from judgment of C. P. Berks Co., Jan. T., 1895, No. 76, on case stated in favor of plaintiff.   Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Case stated to determine the right of a turnpike company to charge tolls on a bicycle.

The facts appear by the opinion of the Supreme Court.

The court entered judgment in favor of plaintiff for five cents.

No assignments of error were printed in appellants' paper-book.

*Isaac Heister* and *John G. Johnson, David F. Mauger* with them, for appellants, cited: William v. Ellis, L. R. 5 Q. B. D. 175; act of April 23, 1889, P. L. 44; State v. Yopp, 97 N. C. 477; In re Wright, 29 Hun. 357; Twilley v. Perkins, 77 Maryland, 252; Shift v. Topeka, 43 Kansas, 671; Attorney General v. President, Managers & Co. of the Germantown & Perkiomen Turnpike Co., 55 Pa. 466.

*George S. Graham, Baer & Snyder* with him, for appellee, cited: Pittsburg, McKeesport & Youghiogheny R. R. v. Com., 104 Pa. 583; Nor. Cen. Ry. v. Com., 90 Pa. 300; Turnpike Co. v. Brown, 2 P. & W. 464; State v. Maine, 27 Conn. 641; Murray v. County Commissioners, 12 Metcalf (Mass.), 458; Perrine v. Canal Co., 9 Howard, 172; Penna. R. R. v. Canal Commissioners, 21 Pa. 22; Halderman's App., 104 Pa. 259.

OPINION BY MR. JUSTICE DEAN, April 29, 1895:

These facts, as abbreviated from the case stated, were agreed upon in the court below :

1. The defendant is a turnpike company, incorporated by act of 20th March, 1810.   Said act and its supplements were made part of the cases stated.

2. On March 9, 1894, the company made an order, that all persons riding bicycles upon the turnpike should not pass through any of its gates, except upon payment of toll at rate of one cent per mile.

3. The bicycle was not invented and in common use until the year 1875.

4. The plaintiff, on December 11, 1894, while on his bicycle, attempted to pass through a toll gate on the turnpike, but was stopped by the gate-keeper, who demanded from him five cents toll, being the amount demandable at the rate of one cent per mile. Plaintiff paid the five cents under protest, and was then permitted to pass.

5. As a general rule, horses gentle and well broken do not take fright at bicycles, but some such horses do.

The question of law for the court to answer, was, whether on these facts the company had a right to collect this toll from the plaintiff? The court below, being of opinion that there was no express statutory grant of authority, and no necessary implication of one, to defendant to collect toll from bicyclers, entered judgment for plaintiff; hence this appeal by defendant.

The defendant was organized as a turnpike company under the act of 1810, and under that act had authority to make all such by-laws, rules and regulations for its management as the Centre Turnpike Company, organized under act of 25th March, 1805, had, with the right to collect such tolls and profits in proportion to the distance as was granted to the Centre Turnpike Company. On turning to this last named act, we find, in section 11, the company had the right " to fix such and so many gates or turnpikes upon and across the said road as will be necessary and sufficient" to collect the tolls hereinafter granted to the said company from all persons traveling on the same with horses, cattle and carriages.

Three distinct uses of the highway are here enumerated as subject to tolls,—by horses, cattle and carriages.

Then the method of enforcing payment of tolls is specified:— " It shall and may be lawful for them (the managers) to appoint such and so many toll gatherers as they shall think proper, to collect and receive of and from all and every person and persons using the said road the tolls and rates hereinafter mentioned, and to stop any person driving any . . . . sulkey, chair,

chaise, phaeton, cart, wagon, wain, sleigh, sled or other carriage of burthen or pleasure from passing through the said gates until they shall have respectively paid the same." Then follows a basis of computation or limitation on the rates to be charged; thus,—" that is to say, for every space of five miles in length of the road, . . . . and so in proportion for any greater or less distance, . . . . for every sulkey, chair, or chaise with one horse and two wheels, six cents; with two horses, nine cents; . . . . for every other carriage of pleasure under whatever name it may go, the like sums according to the number of wheels and horses drawing the same." There is no mention of bicycle propelled by the muscles of the rider; therefore appellees contend, there is no express or plainly implied statutory power in the company to collect tolls from the bicycler.

There is no power in a corporation as against the public except that expressed in its grant, or that which is necessarily implied from it. What is the power granted to this company by the law?

The commonwealth conferred on the defendant a right of eminent domain, for a public highway, under which it appropriated land and constructed and kept in repair its turnpike. As soon as constructed and opened, it became public; it was open to all on equal terms, that is, to all paying toll alike, for a like use. The taking of tolls, it has been held, is only another method of taxing the public for the cost of construction, repair and reimbursement to the corporation for the capital invested: Com. v. Wilkinson, 16 Pick. 175; Plank Road Co. v. Thomas, 20 Pa. 91. The power here, then, was to a private corporation, 1, To take sufficient land for a public highway, and construct and keep the same in repair for the convenient and safe use of the public, 2, To collect from the public who used it by animals and carriages, tolls.

The word tolls, in 1810 and 1805, had in this state a well defined meaning. As is said in Boyle v. Phila. & Read. R. R. Co., 54 Pa. 310: " It is a tribute or custom paid for passage." STRONG, J., in that case, says:—" Before 1833, transportation had generally been over common roads, turnpikes and canals. The common and the legislative mind were then familiar with what is called tolls." Here the defendant demanded, through the toll gatherer it was expressly authorized to appoint, at the

gate it was expressly authorized to erect, from the plaintiff, five cents for passage over the highway, or a toll for its use. It may be conceded, that the enumeration in the act of 1805, of the uses for which tolls may be collected, restricts the right to collect for such uses only, as are either specially or generally designated. But if a bicycle be a carriage, then the general words " other carriage of burthen or pleasure," and " every other carriage of pleasure under whatever name it may go," are sufficiently descriptive to subject it to toll. It is not strenuously contended that a bicycle is not a two wheeled carriage. It is no less a carriage because propelled by a man instead of being drawn by a horse; whether it be one of burden or pleasure, or both, is not material, for if either, defendant was expressly authorized to collect toll from the persons using it on the turnpike.

But, it is argued, the only basis fixed in the act for computation of toll on carriages, is by wheels and horses, not wheels or horses; therefore, as this carriage is not drawn by horses, the amount of toll cannot be determined by the law of the corporation, and as it cannot thus be determined, there is no power to demand any.

Assuming, the amount of toll to be charged is incapable of computation by the method designated for other vehicles in the act, that does not negative the power expressly given to collect toll from those traveling by carriage. The method of computation by wheels and horses is not the power to collect toll, which is expressly given ; that is a mere limitation on the power; the demand must not exceed the sums specified for the animals and vehicles enumerated.

In Pa. R. R. v. Sly, 65 Pa. 205, it is held, that toll is the consideration for the use of the highway, and where there is no express power to charge for transportation by the corporation itself over its own road, the right is a necessary incident of the power granted. Says SHARSWOOD, J., repeating the language of STRONG, J., in Boyle v. P. & R. R. R. Co., supra, " No provision was made respecting rates and charges for their own service as carriers ; but the very purpose of their incorporation was, that they might carry. How can they carry without compensation ? Authorized to engage in a business, it is necessarily incident to their authority, that they have the rights which ordinarily belong to such a business."

If no method of computation had been given in the 12th section of the act, the power to collect could have been enforced. If a statute confers authority to receive toll, the law will furnish a remedy to enforce the right. Here, however, not only is the right or power statutory, but also the method of collection; the right to appoint toll gatherers, and erect gates, is expressly given, and the right to the managers to make all such rules and orders as shall be necessary for the well ordering of the affairs of the company.

Undoubtedly, the rules and regulations so made must be reasonable and the amount demanded for the carriage subject to toll must be reasonable; and this is the limitation on the power which the law fixes when the statute is silent as to the amount.

The manifest intent of the act of 1810, clearly expressed, was to confer upon defendant authority to collect tolls upon this highway from all persons using the same by carriage of burthen or pleasure, and it acted within its authority in collecting toll from this plaintiff.

The only other question raised, is, whether the amount demanded and received, five cents, was in excess of the amount authorized by law. Prior to the act of 23d of April, 1889, it was at least a matter of disputation, whether the use of bicycles on the public highways was not fraught with danger to travelers driving horses; on some of the highways and bridges owned by private corporations, they were excluded, because, in the judgment of the managers, safety to the general public demanded their exclusion. Then the legislature, in the exercise of its undoubted control over the highways of the commonwealth, passed the act referred to, which reads thus :—

" Bicycles, tricycles and all vehicles propelled by hand or foot, and all persons by whom bicycles, tricycles and such other vehicles are used, ridden or propelled upon the public highways of this state, shall be entitled to the same rights and subject to the same restrictions in the use thereof, as are prescribed by law in the case of persons using carriages drawn by horses."

This act deprived turnpike companies of all discretion in determining whether this kind of vehicle was dangerous to the traveling public, and, in effect, peremptorily forbade its exclusion. Under it, the bicycler, with his two wheeled carriage,

has the same right to travel on the turnpike as the owner of a sulky, whose carriage is drawn by a horse, but subject to the same restriction as is prescribed by law for the owner of the two wheeled horse carriage. The only restriction of the right to the use of the road by the driver of the two wheeled horse carriage, is, that he shall pay six cents toll for every five miles. The amount charged in this case is somewhat less than that sum; therefore it is within the limit as to the amount fixed by the act of 1889. Without this act, the power to demand and receive tolls under the act of 1810 was clear; the amount, however, being incapable of computation under that act, the managers would have been restricted by the law to a reasonable charge; as this would have been a source of irritation and possible litigation, the legislature has imposed a maximum charge on defendant, beyond which it cannot go. It has established, out of reach of the discretion of the company, the bicycler's right upon the turnpike, and at the same time has placed a peremptory limitation on the power of the company to exact excessive tolls. The act invests the corporation with no power it did not already possess; confers no benefit it did not already enjoy; and therefore, whether it had accepted the constitution of 1874, as provided in article XVI. sec. 2, is wholly immaterial. The act was solely for the benefit of the bicycler, and the corporation only points to it, as demonstrating that it did not exceed the limit of its power by the act of 1810, in receiving this toll.

It may well be doubted, whether, without express authority from the legislature, the managers of a public highway could lawfully so discriminate between vehicles using it, as to exempt wholly one class of carriages from the tolls which it imposed on all other carriages. Under the act of 1889, there is no power to exclude the bicycler from the turnpike; he has the same right as owners of other carriages to insist that the highway shall be maintained in a reasonably safe condition of repair; the corporation is answerable for injury to himself or vehicle, if this duty be not maintained. Then why should he not bear his fair share of the burden imposed upon the public for the use of it? We see no reason in law or in fact why he should not.

Therefore the judgment is reversed, and it is directed that judgment be entered on the case stated for defendant.