IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION

## DECEMBER TERM, 1921

---

### T. C. TURNER *v.* BEN ALLEN ESLICK.*

*(Nashville. December Term, 1921.)*

1. TURNPIKES AND TOLL ROADS. Right to collect tolls is a franchise which vests only as granted by legislature.

The right to collect tolls is a franchise, a sovereign prerogative, wh'ch vests only when and so far as granted by the legislature. (*Post, p.* 240.)

Acts cited and construed: Acts 1875, ch. 142.

Code cited and construed: Secs. 1777, 2463 (T.-S.).

2. CORPORATIONS. That fairly implied in charter is as much granted as that expressed.

In construing a corporate charter, that which is fairly implied is as much grante as that expressed. (*Post, p.* 240.)

Case cited and approved: Doty v. Telephone, etc., Co., 123 Tenn., 329.

3 STATUTES. Express exception, exemption or saving excludes others.

Where a general rule is established by statute with exceptions, the court will not curtail the former nor add to the latter by implication; an express exception, exemption, or saving excluding others. (*Post, pp.* 241-245.)

---

*On right to take toll for use of road or bridge by automobile, see note in L. R. A. 1917E, 562.

(236)

Turner v. Eslick.

4. **TURNPIKES AND TOLL ROADS.** Tolls may be collected from automobilists under statute relative to horse-drawn conveyances.

Under Thompson-Shannons Code, section 2463, conferring the right to collect tolls and fixing rates for certain horse-drawn conveyances, but excepting persons on certain missions, tolls may be collected from automobilists; the exceptions stated implying that all travel not exempted is subject to toll. (*Post, pp.* 241-245.)

Acts cited and construed: Acts 1877, ch. 23.

Cases cited and approved: Kelly v. State, 123 Tenn., 516; Burns v. City of Nashville, 132 Tenn., 429; In re Highway of Peru, 91 Vt., 295; Mallory v. Saratoga Lake Bridge, Co., 53 Misc., 446; By-Town Union Co. v. Blackburn, Rap. Jud. Quebec, 24 B. R., 118; Geiger v. Perkiomen, etc., Turnpike Road, 167 Pa., 582; Murfin v. Detroit, etc., Plank-Road Co., 113 Mich., 675; Burton v. Monticello & B. Turnpike Co., 162 Ky., 787.

Cases cited and distinguished: Gibbons v. Ogden, 9 Wheat., 1; Brown et al. v. State of Maryland, 12 Wheat., 419.

Code cited and construed: Sec. 2463 (T.-S.).

5. **TURNPIKES AND TOLL ROADS.** Turnpike company cannot be required to permit free use of road by automobiles.

A turnpike company, being required by Thompson-Shannon Code, sections 1769, 1771, to keep the road in repair, though authorized by its charter to collect tolls for the use thereof by horse-drawn conveyances only, may exact a toll from automobilists, whose use of the road it cannot deny, as to permit free use of the road by them would result in taking property without due process in violation of Construction article 1, section 8, and Construction U. S. Amend. 14. (*Post, pp.* 245, 246.)

Case cited and approved: Sumner County v. Interurban Transportation Co., 141 Tenn., 493.

Code cited and construed: Secs. 1769, 1771 (T.-S.).

6. **TURNPIKE AND TOLL ROADS.** Automobilsts not exempt from tolls for use of "turnpike road," "public road."

A turnpike road being a public road, which is a way open to all the people without distinction for passage and repassage at their pleasure, a turnpike company, authorized by its charter to exact toll for the use of the road by horse-drawn vehicles, cannot be

required to exempt automobilists, as to do so would be an unjustifiable discrimination remediable on complaint by any party adversely affected.  (*Post*, *p.* 246.)

7. **STATUTES.** Development of obnoxious features after passage does not affect validity.

That obnoxious features of an act did not develop for several years after its passage does not affect its validity, which is determined, not by what has been done, but by what may be done. (*Post*, *p.* 247.)

Cases cited and approved:  Stuart v. Palmer, 74 N. Y., 183;  Hathorn v. Natural Carbonic Gas Co., 194 N. Y., 326;  Montana Co. v. St. Louis Mining Co. 152 U. S., 160.

8. **CONSTITUTIONAL LAW.** Must be construed to save constitutionality.

A statute must be construed, if possible, to save its constitutionality. (*Post*, *p.* 247.)

9. **STATUTES.** Must be construed to carry out purpose and avoid absurd consequences.

A statute must be construed, if possible to make it sensible, to effect the purpose for which it was enacted, and avoid absurd consequences.  (*Post*, *p.* 247.)

Cases cited and approved:  Dugger v. Ins. Co., 95 Tenn., 245;  State v. Schlitz Brewing Co., 104 Tenn., 715;  Maxey v. Powers, 117 Tenn., 381;  Riggins v. Tyler, 134 Tenn., 577.

10. **TURNPIKES AND TOLL ROADS.** May exact reasonable toll for use of road by vehicles for which not rate is fixed.

That a statute fixing toll rates for the use of a turnpike by horse-drawn conveyances fixed no rate of toll for vehicles not mentioned, such as automobiles, does not affect the right to exact tolls therefrom;  the turnpike company being entitled to demand a reasonable toll until such rates are fixed by law.  (*Post*, *p.* 247.)

Case cited and approved:  Geiger v. Perkiomen, etc., Turnpike Road, 167 Pa., 582.

FROM GILES.

Appeal from the Circuit Court of Giles County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. W. B. Turner, Judge.

R. H. Crockett, Smith & Berry and Eslick & Eslick, for plaintiff.

R. E. Dotson and Hughes, Hatcher & Hughes, for defendant.

Mr. Justice Green delivered the opinion of the Court:

Defendant in error, Eslick, drove his automobile through a gate of the Pulaski & Brick Church Turnpike Company, refusing to pay toll, over the protest and objection of the gatekeeper. Eslick was advised that the turnpike company did not have authority under its charter to levy tolls on the passage of motor-driven vehicles.

Section 1777, Thompson's-Shannon's Code, is as follows:

"Any person who passes a turnpike gate without paying toll, or avoids paying toll by going around any such gate, shall forfeit five dollars, for the use of the turnpike, which may be recovered by the gatekeeper before any justice of the peace."

The charter of this Turnpike Company contains a similar provision.

The gatekeeper, Turner, accordingly brought suit before a magistrate to recover this statutory penalty and the toll. The magistrate rendered a judgment in favor of the gatekeeper for $5.15. The circuit court reversed this judgment and dismissed the suit. The court of civil appeals affirmed the judgment of the circuit court. The case is before us on *certiorari* to the court of civil appeals, and has been fully argued here.

The only question is whether a turnpike company organized under that portion of chapter 142 of the Acts of 1875 providing for the incorporation of such companies is entitled to collect toll from automobiles.

The relevant provision of the turnpike company's charter is authority to charge as follows:

"For hogs or sheep, per head, one (1) cent; for cattle, or horses, or mules, or asses, in a drove, per head, two (2) cents; for horses or mules not in a drove, nor employed in drawing, whether mounted or not, per head, five (5) cents; for every four horse loaded wagon, twenty-five (25) cents; for every two horse loaded wagon, fifteen (15) cents; for buggies, barouches, and other similar two horse carriages, twenty-five (25) cents; for one (1) horse buggies and other similar vehicles for the conveyance of persons, ten (10) cents; for other vehicles for the transportation of goods or produce, drawn by not more than two animals, ten (10) cents; and for each additional animal, five (5) cents, provided toll is charged but for one way, if parties go and return the same day. No toll shall be demanded from persons passing from one to another part of his farm, or from persons attending funerals or religious worship, or in going to or returning from the precincts at elections, or places of militia muster, the person being authorized to vote or perform militia duty, or from persons going to or returning from a grist mill on horseback with grain for family use, or from any person traveling on foot." Thompson's-Shannon's Code, section 2463.

It is to be conceded that the right to collect tolls is a franchise, a sovereign prerogative, and vests in an individual or corporation only when, and only so far as, granted by the legislature.

It is to be remembered, however, as this court formerly said in construing a corporate charter. "That which is

fairly implied is as much granted as that which is express-
ed." *Doty* v. *Telephone, etc., Co.*, 123 Tenn., 329, 130 S. W.,
1053, Ann. Cas., 1912C, 167.

The conclusion of the lower courts entirely ignores the
effect of the exceptions contained in that section of the
charter of the turnpike company under consideration.

The charter confers the right to collect tolls and fixes the
rates for certain beasts and horse-drawn conveyances. It
then provides:

"No toll shall be demanded from persons passing from
one to another part of his farm, or from persons attending
funerals or religious worship, or, in going to or returning
from the precincts at elections, or places of militia muster,
the person being authorized to vote or perform militia duty,
or from persons going to or returning from a gristmill on
horseback with grain for family use, or from any person
traveling on foot." Thompson's-Shannon's Code, section
2463.

The right to collect tolls having been granted, the excep-
tion of persons going on certain missions and the excep-
tion of "any person traveling on foot" necessitates the im-
plication that all travel not excepted was subject to toll.
That is to say all persons not traveling on foot were sub-
ject to toll unless traveling on one of the excepted mis-
sions. This construction is justified by a rule long es-
tablished and frequently employed.

The rule is thus stated:

"An express exception, exemption or saving excludes
others. Where a general rule has been established by stat-
ute with exceptions, the court will not curtail the former
nor add to the latter by implication. Exceptions strength-
en the force of a general law, and enumeration weakens it

146 Tenn.—16

as to things not expressed." Lewis' Sutherland on Statu-
tory Construction, section 494.

The foregoing has been twice quoted and approved b,
this court. *Kelly* v. *State,* 123 Tenn., 516, 132 S. W., 193,
*Burns* v. *City of Nashville,* 132 Tenn., 429, 178 S. W., 1053.

In *Kelly* v. *State,* supra, the court was considering chap-
ter 23, Acts 1877, the first section of which made it unlaw-
ful to sell or tipple any intoxicating beverage within four
miles of a school house. It was insisted that a wholesale
sale was not prohibited by this section. Sales by manu-
facturers of such liquors in wholesale packages or quan-
tities were excepted by the second section of the statute.
By reason of this exception in the second section of the
act it was held that the first section intended to forbid all
sales.

In *Gibbons* v. *Ogden,* 9 Wheat., 1, 6 L. Ed., 23, the ques-
tion arose as to whether the power to regulate navigation
was included in the power which the federal Constitution
gave to Congress to regulate commerce. Certain sections
of the federal Constitution imposed restrictions upon the
power of Congress with respect to navigation. It was
held that these exceptions implied the power to regulate
navigation otherwise than as restricted. Chief Justice
MARSHALL said:

"It is a rule of construction, acknowledged by all, that
the exceptions from a power mark its extent; for it would
be absurd, as well as useless, to except from a granted pow-
er, that which was not granted—that which the words of
the grant could not comprehend. If, then, there are in the
Constitution plain exceptions from the power over naviga-
tion, plain inhibitions to the exercise of that power in a
particular way, it is a proof that those who made these
exceptions, and prescribed these inhibitions, understood the

power to which they applied as being granted." *Gibbons* v. *Ogden*, supra.

In *Brown et al.* v. *State of Maryland*, 12 Wheat., 419, 6 L. Ed., 678, the court was considering the power of the State of Maryland to require importers of foreign goods to take out a license. The federal Constitution (article 1, section 10) provides that—

"No State shall without the consent of Congress, lay. any imports, or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws."

It was held that this exception negatived the power of the State to impose any tax other than an inspection tax, and that the license could not be lawfully exacted. The same learned judge said:

"If it be a rule of interpretation to which all assent, that the exception of a particular thing from general words, proves that, in the opinion of the lawgiver, the thing excepted would be within the general clause, had the exception not been made, we know no reason why this general rule should not be as applicable to the Constitution as to other instruments. If it be applicable, then, this exception in favor of duties for the support of inspection laws, goes far in proving that the framers of the Constitution classed taxes of a similar character with those imposed for the purposes of inspection, with duties on imports and exports, and supposed them to be prohibited." *Brown et al.* v. *State of Maryland*, supra.

From these authorities it follows that but for the exception in the charter of the turnpike company heretofore quoted, this charter would have authorized the company to collect tolls from those traveling on foot. In other words, to collect toll from all travel. It cannot then be main-

tained that the right to collect toll from any vehicle is beyond this charter, since no vehicle is excepted.

Other instances of the application of this rule of construction are given as follows:

"Power of eminent domain was granted to a railroad company to enter on land and appropriate as much of it, 'except timber,' as might be necessary for its purposes. 'Why an exception,' asked GIBSON, C. J., 'if the word land was not supposed to embrace everything else? The expression of one thing is the exclusion of another; and consequently no further exception was intended.' A statute declared that 'all offices, posts of profit, professions, trades and occupations, except the occupation of farmers,' shall be valued and assessed and subject to taxation; it was held that the exception of farmers excluded any other, and that the calling of a minister of the gospel was a 'profession' and taxable. Certain exemptions from distress for taxes being expressed in a statute, by fair implication all other property is liable." Lewis' Sutherland on Statutory Construction, section 494.

From the foregoing illustrations it appears that a criminal offense, a restraint on a State's right to tax, the power of eminent domain, liability to taxation, and other things have been held to follow as necessary results of exceptions contained in statutes and Constitutions. No less certain authority is required for these things than for levying tolls, and we see no reason for denying the application of this rule of construction in the case before us.

We have examined *In re Highway of Peru,* 91 Vt., 295, 100 Atl., 679, L. R. A., 1917E, 559; *Mallory* v. *Saratoga Lake Bridge Co.,* 53 Misc., 446, 104 N. Y. Supp., 1025; and *By-Town Union Co.* v. *Blackburn,* Rap. Jud. Quebec, 24 B. R. 118, 24 D. L. R., 747.

These cases hold that authority to levy tolls upon horse-drawn vehicles and animals does not include authority to levy tolls upon automobiles. So far as the cases disclose, the charters of none of the corporations were similar to the charter we are considering. None of the charters contained exceptions.

This is probably true of the Bicycle and Canal Cases cited. The Pennsylvania court has held a bicycle subject to toll. *Geiger* v. *Perkiomen, etc., Turnpike Road,* 167 Pa., 582, 31 Atl., 918, 28 L. R. A., 458.

The Michigan court has held that toll may not be exacted of a bicycle, but in the same opinion intimates that it would hold differently with reference to a motor vehicle. *Murfin* v. *Detroit, etc., Plank-Road Co.,* 113 Mich., 675, 71 N. W., 1108, 38 L. R. A., 198, 67 Am. St. Rep., 489.

The Kentucky court has held an automobile liable to toll. *Burton* v. *Monticello & B. Turnpike Co.,* 162 Ky., 787, 173 S. W., 144.

We do not think it worth while to review these cases, since the result in each case must depend on the particular charter considered, at least, to a great extent.

If we take a broader view of the controversy before us, we reach the same result. A turnpike company may not deny the use of the road to an automobile. *Sumner County* v. *Interurban Transportation Co.,* 141 Tenn., 493, 213 S. W., 412, 5 A. L. R., 765. Yet, as is recognized in that case, an automobile, particularly the larger trucks, wear and destroy the road more than any other vehicle. A turnpike company is required by statute to keep the road in good repair under penalty of having its charter forfeited as well as criminal prosecution. Thompson's-Shannon's Code, sections 1769, 1771.

In many sections of our State the automobile has supplanted the horse-drawn vehicle. Automobiles have been substituted for horse-drawn vehicles very largely in every section. To permit automobiles to have the free use of the turnpikes and wear them down, and to require the turnpike owners to keep the properties up without compensation, seems indefensible. Such a construction of the incorporating statute would seem to result in a taking of property in contravention of the law of the land, and without due process, in violation of section 8 of article 1 of the Constitution of Tennessee and the Fourteenth Amendment to the Constitution of the United States. It would be hard to hold that by the acceptance of its charter the turnpike company had precluded itself from contesting such an onerous construction thereof.

And again, a turnpike road is a public road, and "a public road is a way open to all the people without distinction for passage and repassage at their pleasure." *Sumner County v. Interurban Transportation Company,* supra. To require the payment of toll by those traveling in horse-drawn vehicles, and to exempt from the payment of toll those traveling in automobiles, upon a road where all of them have equal rights, would be a discrimination that could not be justified. A discrimination that would be remedied upon complaint by any party adversely affected. It would follow that the statute under which the turnpike companies are organized, if so construed, would be unconstitutional. Thus the effort of the legislature to authorize the incorporation of turnpike companies—the purpose of the statute—would be defeated, to say nothing of the confusion that would attend the outlawry of all these corporations.

The fact that the obnoxious features of the act did not develop for several years after its passage would make no difference. It is not·what has been ·done, but what may be done, under a statute that determines its validity. *Stuart* v. *Palmer,* 74 N. Y., 183, 30 Am. Rep., 289; *Hathorn* v. *Natural Carbonic Gas Co.,* 194 N. Y., 326, 87 N. E., 504, 23 L. R. A. (N. S.), 436, 128 Am. St. Rep., 555, 16 Ann. Cas., 989; *Montana Co.* v. *St. Louis Mining, etc., Co.,* 152 U. S., 160, 14 Sup. Ct., 506, 38 L. Ed., 398.

These and other difficulties wait upon the interpretation given to this charter by the lower courts. A primary rule is that a statute must be construed, if possible, to save its constitutionality. *Dugger* v. *Ins. Co.,* 95 Tenn., 245, 32 S. W., 5, 28 L. R. A., 796; *State* v. *Schlitz Brewing Co.,* 104 Tenn., 715, 59 S. W., 1033, 78 Am. St. Rep., 941. Another rule is that a statute must be construed, if possible, to make it sensible and to effect and carry out the purpose for which it was enacted, and absurd consequences should be avoided. *Maxey* v. *Powers,* 117 Tenn., 381, 101 S. W., 181; *Riggins* v. *Tyler,* 134 Tenn., 577, 84 S. W., 860.

Applying these rules of construction, as well as the one first discussed, it is clear that the lower courts reached an erroneous conclusion herein.

The circumstance that the statute fixes no rates of toll for vehicles not mentioned is of no moment. Until such rates are fixed by law, the turnpike company is entitled to demand a reasonable toll from automobiles. *Geiger* v. *Perkiomen, etc., Turn-Pike Road,* 167 Pa., 582, 31 Atl., 918, 28 L. R. A., 458. There is no complaint here that the charge is excessive.

Reversed. Judgment here for Turner for use, etc., for $5.15 and costs.