# Proctor *vs* Crozier & Marshall.

## ERROR TO THE LINCOLN CIRCUIT.

### *Tolls.   Wilderness Turnpike Road.*

CHIEF JUSTICE EWING delivered the opinion of the Court.—Judge MARSHALL did not sit in this case.

IN 1842-3, Proctor was the gate keeper of the Turnpike gate on Rockcastle river, on the Cumberland Gap and Wilderness road. Crozier & Marshall were contractors to carry the mail of the United States during the same years, on the said road, and their stage coach, with four horses, passed through said gate daily, and Proctor as gate keeper, under the direction of the Board of Directors for said road, exacted and received from them $1 6 cents on the stage coach, team, and driver, and paid the same over to the Board of Directors, before this suit was instituted. In September, 1843, Crozier & Marshall instituted this suit against Proctor to recover back the tolls so paid. The writ issued before filing the declaration, and lays the plaintiffs' damages at $1,200. The declaration is in assumpsit and is in blank, as to the sum assumed to be paid, and in the damages. Proctor demurred and pleaded non-assumpsit at the same time. The Court overruled the demurrer, and a trial being had on the issue of fact, a verdict was found and judgment rendered in favor of the plaintiffs for $297. A new trial was moved by Proctor and refused, and he has brought the case to this Court

The blank in the declaration for the damages, was supplied by the damages laid in the writ; there being an issue of fact and verdict for the plaintiffs, we do not feel disposed to reverse the judgment for the formal defect of the blank in the declaration, for the amount assumed.

It must be taken for granted by the verdict, that the amount was proved. And though it might have been proper to sustain the demurrer in the Court below, after the verdict, which pre-supposes that the amount was proved, we think that the judgment ought not to have been arrested for this formal defect, and ought not to be reversed.

Upon the proof of the fact that tolls were exacted and received by Proctor, at the rate of $1 06 cents, for each stage that passed through the gate, an instruction to the jury, at the instance of Proctor, was moved, to find as in case of a non-suit which was refused, and instructions, at the instance of the plaintiffs were given, that the jury were bound to find for them, upon the ground that they were not bound to pay tolls for the passage of the stage coach transporting the United States mail.

We have with much labor, examined the numerous statutes relating to the Turnpike road in question, and are satisfied that tolls were properly demandable from the plaintiffs. The early statutes upon the subject, it is true, excepted *post riders* and *expresses* from the payment of tolls. But at that time the mail and expresses were carried on horse back, and not by stage coaches; and the Legislature, at that early day, might well have deemed it proper for the information of her own citizens, and in view of the fact that that mode of transportation would do little injury to the road, to except the carriers of the mail and expresses, from the payment of tolls. That the exception was not intended to apply to stage coaches, may be clearly implied from the language of the acts, as well as from the fact that no stage coaches were then running or thought of. But even *post riders* and *expresses* are not exempt from the payment of tolls, in the tariff of tolls fixed by the act of 1815, (5 *Litt. Laws of Ky.* 196,) which repeals all acts or parts of acts coming within its purview.

---

PROCTOR
*vs*
CROZIER & MARSHALL.

Tho' it might be good cause of demurrer that the damages were not stated in the declaration, yet after verdict it is not sufficient ground to arrest the judgment or authorize a reversal of it in this Court.

Tolls were properly demandable of contractors for carrying the U. S. Mail in stage coaches on the road from Crab Orchard to Cumberland Gap by the Directors of said road previous to 1843.

PROCTOR
*vs*
CROZIER & MAR-
SHALL.

The 11th section of the act of 1830, (*Session Acts,* 40,) provides that "the keepers of the Madison and Rockcastle Turnpike gates shall receive the following rates of toll, from persons passing through the same, to-wit: for each wagon and team or *carriage* with four wheels, seventy five cents; each cart or carriage with two wheels and team, fifty cents; each horse or mule, four cents; each head of cattle, two cents; each hog or sheep, one cent; for a man and horse twelve and a half cents; and each person over ten years of age, six and a fourth cents." And the statute of 1831, (*Session Acts of* 1830, 181) provides "that the keepers of the Madison and Crab Orchard gates on the Wilderness road, shall after the first day of March next, receive the following rates of tolls, from persons with their property passing said gates and no more. On each one horse wagon or cart 25 cents; each two horse wagon, 37½ cents; each road wagon 75 cents; each ox cart 50 cents; *each pleasure carriage on springs 75 cents*; each *horse* beast, mule or ox drawing such carriages, wagons or carts, 6¼ cents; and each *person* over ten years of age, 6¼ cents."

If the latter statute should not be construed to embrace *Stage coaches conveying passengers fall properly under the denomination of pleasure carriages, so far as relates to charging tolls.* stage coaches, we would be of opinion that the first recited statute, would most certainly apply to and embrace such vehicles, and they would be subject to the tolls fixed by that statute, as the last statute does not in express terms, nor by necessary implication, repeal the former, only so far as it fixes the tolls on the same description of persons and vehicles. It provides that, "no more" than the tolls fixed by its provisions, shall be received from persons with their property passing said gates; but the restriction applies, as we conceive, to the *amount* of tolls assessed on the persons, vehicles and things, specified by the provisions of the act, and not to other vehicles which may not be embraced, but which were embraced in the former law and the rate of toll prescribed. The provision that *no more* shall be charged, means that no greater *amount* than that fixed by the last statute on the persons and vehicles specified shall be charged, but not that a toll may not be exacted under the former statute upon those

vehicles or carriages which may not be provided for in the latter act.

But waiving this view of the subject, we are satisfied that the Legislature, by the latter act, never could have intended otherwise than that stage coaches, as well as all other vehicles, should be liable to pay tolls. This is a State road, made at the expense of the State, and why should stage coaches employed in carrying the United States Mail, be exempted from the payment of tolls? The road would be cut up and worn by its travel, as much as by the travel of the most of other vehicles, and the United States, if instead of providing her own post roads, uses the roads furnished at the cost and expense of the State, she is able to pay, and should be made liable to pay. the same rates of toll as our own citizens are required to pay, as was decided by this Court in the case of *Dickey* vs *Maysville and Lexington Turnpike Road Company*, (7 *Dana*, 113.)

We think the words "each pleasure carriage on springs, seventy five cents," was intended by the Legislature, and may be fairly interpreted to embrace all *carriages on springs*, including post coaches or other vehicles, which may be used for carrying *persons* for pleasure or travel, in contradistinction to vehicles of burthen. The prior clauses fix the tolls on wagons, carts, &c. used for the transportation of heavy burthens, and then to provide for the tolls to be paid on those vehicles not so used, but used for the transportation of *persons*, provides by a general clause intended to embrace all such, "each pleasure carriage on springs, seventy five cents;" by the subsequent clause, discriminating and increasing the amount according to the number of horses used, by a charge of six and a fourth cents "on each horse, mule, or ox drawing such carriages, wagons, or carts." A dearborn, hack, or yankee wagon may be used as a pleasure carriage, yet they may be used for the transportation of persons by a common carrier. And surely if such vehicles were used in the regular transportation of persons along said road and through said gates, it would not be seriously contended, that they were not liable to pay tolls. So a stage coach may and is often used as a pleasure carriage, or for purpo-

PROCTOR
*vs*
CROZIER & MAR-
SHALL.

ses of pleasure only; and it cannot, as we conceive, be seriously contended that a stage, when used for the latter purpose, is not liable to pay toll. And if liable to pay toll, if used for the latter purpose, under the description of a pleasure carriage on springs, should also, under the same general description, when used for the transportation of the United States Mail or persons, as common carriers, be made to pay tolls.

The statute of 1843, (*Session Acts* 1842, 139,) which provides that all persons engaged in the transportation of the United States Mail over the Crab Orchard and Cumberland Gap Turnpike road, shall pay tolls, is declaratory of the Legislative intention, in the acts of 1830–31, *supra*, and so far from detracting from the conclusion to which we have arrived, strengthens it.

The general act of 1842 regulating the tolls on Turnpike roads (3d *Stat. Laws*, 565,) does not apply to the road in question, as is manifest from the 7th section of the statute.

The judgment of the Circuit Court is reversed and cause remanded, that a new trial may be granted without the payment of costs, and further proceedings had not inconsistent with this opinion.

*Turner* for plaintiff: *Harlan & Craddock* for defendants.

A petition for a re-hearing or modification of the foregoing opinion being filed by defendants' counsel, the following response was made thereto.

## RESPONSE,

### By Chief Justice Ewing.

We have examined the statute "approved 22d February 1834," to which our attention has been called, by the counsel for Crozier and Marshall, since the foregoing opinion was delivered, and are clearly of opinion that the statute was not intended nor should be construed to revive the tariff of tolls fixed by the statute of 1830, nor to repeal, alter or change those that were prescribed by the statute of 1831.

*The statute of 1834, did not, by implication or otherwise, repeal the act of 1831 fixing the tariff of fees on the Crab Orchard & Wilderness road.*

The statute of 1830 introduced a new system, with respect to the road, by repealing all laws authorizing a general superintendant, and authorizing the County

Courts through whose counties the road passed, to appoint overseers over specified sections. Designated *duties* and *rights* are prescribed to the several County Courts, to the overseers and gate keepers, in their several stations. The statute of 1834, *supra*, modifies and changes those rights and duties in several respects, and then, in the 5th section provides, "that the several County Courts, the gate keepers, the overseers to be appointed by this act, and all others, shall in every particular and respect, be governed and controlled, in the discharge of *their duties* and rights, by the act of 1830, except so far as this act changes and repeals said act." We understand this section as applying merely to the individual *rights* and *duties* of the different persons named, and as not intended to re-establish the tolls fixed by the act of 1830, nor to change or modify, in any respect, the tolls which had been prescribed by the act of 1831. It does not, in express terms, revive the tolls prescribed in the former act, nor does it repeal the single section of the latter act fixing the tolls; nor should it be construed as doing either by implication. Its entire provisions may be satisfied without touching the subject of the tolls, or being brought into conflict with the act of 1831, prescribing their rate. We cannot, therefore, construe the act of 1834 as repealing, by implication, the act of 1831.

And we are the more confirmed in the conclusion at which we have arrived, from the fact that this seems to have been the cotemporaneous construction of the acts by those concerned in their enforcement, and the further fact, that the Legislature generally, if not universally, whenever they have undertaken to make any change in the *rate of tolls*, specified with precision, in the act making the change, the *rate* to be charged.

The petition for a modification of the opinion is, therefore, overruled.