## Burton v. Monticello and Burnside Turnpike Company.

(Decided February 17, 1915.)

### Appeal from Wayne Circuit Court.

1. Constitutional Law—Section 51 of Constitution.—The purpose of Section 51 of the Kentucky Constitution, which provides that no law enacted by the General Assembly shall relate to more than one subject, which shall be expressed in the title, was to enable persons reading the title of an Act to get a general idea of what the Act treated, or contained, so that the members of the Legislature as well as the public interested in legislation could rely on the title as indicating the subject-matter of the Act, and to assume that the Act contained no legislation that was not embraced, in a general way, by the subject expressed in the title.

2. Constitutional Law—Section 51 of Constitution.—No provision of a Statute directly or indirectly relating to the subject expressed in the title, and having a natural connection therewith, and not foreign to the same, should be deemed within the inhibition of Section 51 of the Constitution, which provides that no law enacted by the General Assembly shall relate to more than one subject, which shall be expressed in the title.

3. Statutes—Sections 39 and 40, Acts 1912, p. 309—Road Engineer —Public Roads.—Sections 39 and 40 relating to the construction of turnpikes owned by individuals or corporations, and prescribing the tolls to be charged for their use, and constituting a part

of the Act of 1912, entitled "An Act defining public roads—Providing for their establishment, regulation and construction, and use and maintenance—Creating the office of Road Engineer, and prescribing the duties thereof" (Acts 1912, p. 309), are not germane to the subject-matter contained in the title, and are unconstitutional.

4. Statutes—Title—Constitutional Law.—When a subject foreign to the title is introduced into the body of an Act, if it is so separate and distinct from the remainder of the subject-matter of the legislation that it may be omitted without affecting the otherwise valid portions, the unconstitutional part will be omitted, and the remainder allowed to stand.

5. Turnpikes and Toll Roads—Vehicles.—It is not the model or the name of a vehicle but the purpose for which it is used that fixes its toll charge for using a turnpike road having the right to charge tolls.

6. Turnpikes and Toll Roads—Statutes—Stage Coaches—Automobiles.—Under a statute which prescribed tolls to be charged for the use of turnpikes by "vehicles," "pleasure carriages or hackney coaches," "stage coaches," and "traction or other engines," but failed to fix a charge for automobiles using the turnpike, automobiles will be classed as "stage coaches," where they are used by a stage coach line in the place of stage coaches.

7. Statutes—Turnpikes and Toll Roads—Tolls—Vehicles.—Under a statute prescribing tolls to be charged for the use of turnpike roads, and exempting certain specified vehicles from tolls, it is not to be presumed that the Legislature intended to exempt from tolls a new type of vehicle, having a new name, but performing the same service that was formerly rendered by a vehicle named in the statute.

WESLEY & BROWN, J. M. KENNEDY and DUNCAN & BELL for appellant.

O. H. WADDLE & SONS and HARRISON & HARRISON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Affirming.

The appellee, the Monticello and Burnside Turnpike Company, is a corporation created in 1881, by an Act of the General Assembly, which authorized it to construct and maintain a turnpike road from Monticello, Kentucky, to Burnside, Kentucky, a distance of 20 miles. Said road was constructed and tollgates placed thereon at intervals of five miles, at which tolls were collected in accordance with schedules established by law. For several years before the institution of this action the ap-

pellant, Burton, was engaged in operating and running stage coaches and other vehicles on appellee's road, on which he carried the United States mails, express, and passengers for hire. He paid the tolls upon his stage coaches, as the law prescribed, but under protest.

Between June 18th, 1912, and January 31st, 1914, appellant paid in tolls for the use of appellee's turnpike road the sum of $3,359.51, of which amount $1,939.09 represented tolls paid on automobiles.

During the period mentioned appellee's turnpike was less than ten feet wide, and, according to the allegations of the petition, it did not have a smooth road-bed, and was neither well ditched nor drained, as required by the Act of 1912.

In March, 1914, Burton brought this action to recover said sum of $3,359.51 from the turnpike company upon the ground that, during said period between June 18th, 1912, and January 31st, 1914, said turnpike and each section thereof was less than ten feet wide; it did not have a smooth road-bed; and was neither well ditched nor well drained.

The trial court having sustained a demurrer to the petition, the plaintiff, Burton, appeals. Several grounds were relied upon to defeat the action; but, under our view of the case, it will be sufficient to consider the single question, whether the Act of 1912 violates Section 51 of the Constitution of Kentucky.

That section reads, in part, as follows:

"No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title."

The title of the Act approved March 18th, 1912, under which this suit was brought, reads as follows:

"An Act defining Public Roads—providing for their establishment, regulation and construction and use and maintenance—creating the office of Road Engineer, and prescribing the duties thereof." Acts 1912, p. 309.

The first section of said Act defines public roads as follows:

"All public roads on which the several county courts have heretofore appointed surveyors to work the same, and allotted hands therefor, which have not been vacated according to law, are hereby declared public roads, without regard to any informality in the orders of the county court by which they were established. A public road

shall be deemed to include necessary culverts, sluices, drains, ditches, waterways, embankments, retaining walls, and all bridges having a span of five feet or less."

Sections 2 to 35, inclusive, of said Act relate to the construction, acquiring, management, and protection of the public roads of the county.

Section 36 reads as follows:

"No tolls other than for the maintenance of such road or bridge shall be charged or collected for traveling upon any of the public roads or over any of the public bridges of this State except those which are now collecting such tolls according to the laws of this State."

Sections 39 and 40, which relate to tolls to be collected for the use of turnpikes owned by individuals or corporations, and under which this action is brought, read as follows:

"On all turnpikes now owned, wholly or in part, by individuals or corporations in this State, tolls not exceeding the following rates may be received in every section of five miles which has been completed, to-wit: For a single horse, mare, gelding, mule or jennet, in addition, one cent, if the same be not hitched to any vehicle; for twenty sheep or hogs, five cents; and for twenty cattle, ten cents, and so on in proportion for a greater or less number; for a riding carriage, whether two or four wheeled, if the road be a macadamized road or a brick road or some other permanently improved road, ten cents; but if not macadamized or not a brick road or other permanently improved road, five cents; and for a cart or wagon, if the tires of the wheels are less than four inches wide, three cents for each animal drawing it; for automobiles, fifteen cents; and for motorcycles, ten cents; and for motor driven vehicles, fifteen cents. For a fractional part of a section, tolls may be received bearing the same proportion to the tolls for a full section that the said fractional part bears such full section. Provided, That when the toll from the fractional part would be less than one cent they may charge and receive one cent. Provided, further, That all coaches, carriages, vehicles and horses used by persons going to and from divine worship, funerals, schools and grist mills for the purpose of having grinding done, shall be exempt from tolls."

"Section 40. The said tolls may be demanded and collected of every person passing the tollgate, whether

he shall have traveled the whole or only a part of the section or fractional part. Provided, That the said toll road or turnpike shall be made so as to conform to the following specifications: All roads or turnpikes shall have a smooth road-bed of not less than ten feet in width, exclusive of ditches, and shall be well side ditched and drained. All cross-drains shall be underdrained or rip-rapped when necessary. All running streams requiring bridges of fifty feet in length or less, and such others as the fiscal court of the county may direct, shall have a bridge or culvert across same sufficiently strong and sufficiently wide to insure safe passage to all kinds of vehicles. Provided, further, That no toll shall be collected unless such toll road or turnpike be constructed in accordance with this section.''

Section 48 creates the office of County Road Engineer, while Section 52 provides that the County Road Engineer ''shall have general charge of all public roads and bridges within his county, excepting turnpikes or bridges owned by or maintained wholly by some citizen or company.''

All told, the Act contains 97 sections, but, for the purposes of this case, it is unnecessary to give any further enumerations or provisions thereof, since the invalidity of Sections 39 and 40, under which this suit is brought, is decisive of the case.

It will be remembered that the title of the Act describes it as ''An Act defining public roads—providing for their establishment, regulation, construction and use and maintenance—creating the office of Road Engineer and prescribing the duties thereof.'' In short, the title speaks solely of public roads and county road engineers; it does not even refer to anything else.

While the many sections of the Act which treat of public roads and county road engineers are germane to the subject matter of the title, it is plain beyond question that Sections 39 and 40, which relate to the collection of tolls upon turnpikes, individually owned, and prescribe the specifications for such turnpikes, have not the remotest connection with the subjects mentioned in the title of the Act. There is not a word in the title from which any person could infer that the Act contained the subject matter of Sections 39 and 40, relating to the construction of turnpikes owned by individuals and corporations, and the tolls to be charged for their use.

In Hyser v. Commonwealth, 116 Ky., 410, it was said:
"This court has repeatedly announced, in effect, that no provision of a statute directly or indirectly relating to the subject expressed in the title, having a natural connection therewith, and not foreign to the same, should be deemed within the inhibition of Section 51 of the Constitution."

This broad, liberal rule was approved in the early leading case of Phillips v. Cincinnati & Covington Bridge Co., 2 Met., 219; and again in Collins v. Henderson, 11 Bush, 74; Hoke v. Commonwealth, 79 Ky., 567; Commonwealth v. Bailey, 81 Ky., 395; Burnside v. Lincoln County Court, 86 Ky., 423; Conley v. Commonwealth, 98 Ky., 125; and Eastern Kentucky Coal Lands Corporation v. Commonwealth, 127 Ky., 667.

In recognizing this rule, however, this court, in Thompson v. Commonwealth, 159 Ky., 12, further said:

"But in no instance has this rule been extended so as to legalize legislation that departs so radically from the title of the Act as do the sections here under consideration. Here the title of the Act limited the scope of the legislation to the appropriation of money for the benefit of the Houses of Reform, and this limitation in the title reasonably and naturally conveyed the meaning that the body of the Act was confined to the appropriation of money and no other subject.

"The purpose of the constitutional provision was to enable persons reading the title of an Act to get a general idea of what the Act treated of or contained, and it has come to be a recognized legislative practice for members and others interested in legislation to read the title of Acts and gather therefrom, in a general way at least, the subject matter of the Act, and under the authority of this constitutional provision members of the Legislature, as well as the public interested in legislation, have the right to rely on the title as indicating the subject matter of the Act, and to assume that the Act contains no legislation that is not embraced in a general way by the subject expressed in the title. But, if it were allowable to insert sections in an Act entirely foreign to the scope of the legislation as expressed in the title, the purpose of the Constitution would be entirely defeated and much legislation would be enacted that the members would not have approved had they known that it was contained in the Act."

See also Henderson Bridge Company v. Alves, 122 Ky., 46; Board of Trustees v. Tate, 155 Ky., 296. Sections 39 and 40, *supra*, not only have no natural connection with the subjects expressed in the title, but they are entirely foreign thereto, and consequently violate Section 51 of the Constitution.

2.  But in holding Sections 39 and 40 invalid for the reason above stated, we must not be understood to mean that the other sections of the Act, which are germane to the subject matter of the title, are invalid. It is manifest that Sections 39 and 40 can be eliminated from the Act without interfering with or affecting in any manner the subject matter of the germane sections, and whenever this can be done so as to leave a complete statute, the statute thus expurgated will be treated as constitutional.

This rule was announced in Wiemer v. Commissioners of the Sinking Fund of Louisville, 124 Ky., 377, as follows:

"When a subject foreign to the title is introduced into the body of an Act, if it is so separate and distinct from the remainder of the subject matter of the legislation that it may be omitted without affecting the otherwise valid portions, then the unconstitutional part will be omitted and the remainder allowed to stand."

Jones v. Thompson, 12 Bush, 394; Fuqua v. Mullins, 13 Bush, 667; Brown v. Moss, 126 Ky., 833; Thompson v. Commonwealth, 159 Ky., 11, are to the same effect.

3.  Section 39 of the Act of 1912 was, however, the first legislative recognition, in specific terms, authorizing turnpike companies to collect tolls for the use of turnpikes by automobiles; and appellant contends that if Section 39 is invalid, then there is no law under which appellee could legally have collected the $1,139.09, which appellant paid as tolls upon automobiles.

Section 39, *supra*, being invalid, appellee's right to charge and collect tolls was governed by Section 4724 of the Kentucky Statutes, which fixed the tolls, in part, as follows: "For each vehicle drawn by one horse or mule, 10 cents; for each vehicle drawn by two horses, mules, or oxen, 20 cents; for each pleasure carriage or hackney coach drawn by three horses or mules, 25 cents; for same when drawn by four horses or mules, 30 cents; for each stage coach having seats within for six passengers, 35 cents; for same for nine passengers, 55 cents; for same for twelve passengers, 75 cents, and 2 cents in addition

for every passenger over four; for each traction or other engine, $1.00."

The appellant's automobiles were used in the place of stage coaches, and served the same purpose as stage coaches.

Appellant insists, however, that an automobile operated for hire, is neither a "pleasure carriage nor hackney coach drawn by horses or mules," a "stage coach," a "vehicle drawn by horses, mules or oxen," or a "traction or other engine;" and that no charge can be made for an automobile.

But should the fact that automobiles were unknown by that name when Section 4724, *supra*, was enacted, exempt them from the payment of tolls? We think not.

In Burton v. Monticello & Burnside Turnpike Co., 33 Ky. L. R., 85, 109 S. W., 319, which was an action by this appellant to recover tolls from the appellee, the court said:

"The statute recognizes a distinction between pleasure coaches or hackney coaches on one hand and stage coaches on the other. A hackney coach is a coach which is hired out; a stage coach is one which is used by the owner to carry passengers from one point to another. A stage coach is not hired out. It remains in the possession of the owner. Under the agreed facts, appellant's vehicles were stage coaches and were properly charged tolls as such. They were used for the carrying of passengers, express matter, and the mails between Burnside and Monticello."

In will be noticed that the court held it was not the model or the name of the vehicle, but the purpose for which it was used, that fixed its toll charge.

We see no serious difficulty in applying Section 4724, *supra*, to the case of automobiles using a turnpike, although automobiles are not named therein. Certainly the Legislature did not intend to exempt from tolls one of the most destructive of all vehicles used upon the turnpikes of the State.

In 38 Cyc., 397, it is said:

"Where a different rate of toll is chargeable on different classes of vehicles, such as wagons, hackney coaches, and pleasure coaches, the class in which a conveyance belongs is to be determined by the meaning of the vehicle named, and where a conveyance is within both a general and a specific class, it is deemed, for the

purpose of toll, to be within the specific class. In this connection the words 'pleasure carriage' are broad enough to include any vehicle used for the carriage of passengers, such as an automobile." See Scranton v. Laurel Run Turnpike Co., 225 Pa. St., 82.

In Proctor v. Crozier & Marshall, 6 B. Mon., 268, it was held that a stage coach properly falls in the grade of pleasure carriages, for the purpose of collecting tolls under a statute that did not provide for rates on stage coaches, the court saying:

"But, waiving this view of the subject, we are satisfied that the Legislature, by the latter act, never could have intended otherwise than that stage coaches, as well as all other vehicles, should be liable to pay tolls. This is a State road, made at the expense of the State, and why should stage coaches employed in carrying the United States mail be exempt from the payment of tolls? The road would be cut up and worn by its travel as much as by the travel of most of the other vehicles, and the United States, if, instead of her own postroads, uses the roads furnished at the cost and expense of the State, she is able to pay, and should be made liable to pay, the same rates of toll as our own citizens are required to pay, as was decided by this court in the case of Dickey v. Maysville and Lexington Turnpike Road Company, 7 Dana, 113."

Section 4724, *supra,* fixes a toll of 25 cents for each "pleasure carriage drawn by two horses," and a toll of 30 cents for each "pleasure carriage drawn by four horses." Can it be said that no toll could be charged for a pleasure carriage drawn by *three* horses? Clearly not. But, as above pointed out, the statute provides a toll for each stage coach, and under the authorities above cited, we think it is clear that an automobile used in the place of a stage coach for the carriage of the mails, freight or passengers, is a stage coach within the meaning of the statute. To hold otherwise would be giving the statute a strained construction, and one never contemplated by the Legislature.

Under this view of the statute it becomes unnecessary to discuss the contention of appellee that the provision allowing a toll of $1.00 "for each traction or other engine" may be made to cover the case.

Sections 39 and 40 of the Act of 1912, being invalid, and Section 4724 of the Kentucky Statutes being broad enough to authorize the collection of tolls upon automobiles, it follows that the circuit court properly sustained the demurrer to the petition.

Judgment affirmed.