## Houston v. Boltz, Judge.

(Decided April 25, 1916.)

### Appeal from Campbell Circuit Court.

1. Counties—Indebtedness for Roads—Creation of—Elections.—A special election held under section 157a of the Constitution, upon a proposition to issue county bonds for the construction of public roads and bridges, may be held on the same day that the general election is held.

2. Counties—Indebtedness for Roads—Creation of.—Under section 157a of the constitution, an indebtedness for public road purposes may be authorized by a majority of the voters of a county who participate in an election upon that question.

3. Statutes—Acts Relating to Roads—Constitutional Law.—The Act of 1896 (sec. 4748b Ky. Stats., 1909), which authorized a county to issue bonds for the purpose of buying privately owned turnpikes and gravel roads, was not repealed by section 89 (sec. 4356s Ky. Stats., 1915) of Chapter 80 of the Acts of 1914, entitled "An Act defining public roads; providing for their establishment, regulation, use and maintenance; and creating the office of County

Road Engineer, and prescribing the duties thereof," because the purpose of the last named Act to repeal the Act of 1896 was not mentioned in its title, and therefore violated section 51 of the constitution.

4. Counties—Issue of Bonds for Purpose of Buying Privately Owned Roads—Elections.—Under the Act of 1896 (sec. 4748b Ky. Stats., 1909), an indebtedness of a county to issue bonds for the purpose of buying privately owned turnpike and gravel roads, can be authorized only by the assent of two-thirds of the voters voting at an election held upon that proposition. An election to authorize the issuance of county bonds for the purpose of buying privately owned turnpike and gravel roads cannot be held under section 157a of the constitution.

5. Counties—Indebtedness for Roads—Issuance of Bonds by Fiscal Court—Mandamus.—After a fiscal court has been authorized under section 157a of the constitution, to issue county bonds for the construction of public roads and bridges, it must issue the bonds as directed by section 4307 of the Kentucky Statutes; it has no discretion to refuse to act, and upon its refusal to issue the bonds, mandamus will lie to compel it to do so.

HOWARD M. BENTON for appellant.

BLAINE McLAUGHLIN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Reversing.

By this action Frank Houston, a resident and tax payer of Campbell County, asks a mandamus against the fiscal court of that county to require it to issue bonds which it is claimed were authorized by an election held on November 3rd, 1914.

Pursuant to orders of the Campbell county court entered upon the petition of the requisite number of voters, the three following propositions were submitted to the voters of Campbell County at the regular election held on November 3rd, 1914: (1) "Are you in favor of issuing $100,000.00 in bonds for the purpose of building roads and bridges?"; (2) "Are you in favor of free turnpikes and gravel roads?"; and, (3) "Are you in favor of issuing $150,000.00 in bonds for the purpose of acquiring all the privately owned turnpikes and gravel roads?"

Each of these propositions received the assent of a majority of the voters who voted thereon; none of them, however, received the assent of two-thirds of the voters who voted thereon. All preliminary steps necessary to a

regular and legal submission of the questions were taken; the election was regularly held; and, the vote was properly canvassed and returned by the county election commissioners. By its answer the fiscal court admitted the truth of the allegations of the petition, which set up the foregoing facts, but stated that it had declined to issue the bonds in each instance because neither proposition had been ratified by two-thirds of the voters voting thereon.

It will thus be seen that there are no disputed questions of fact; the record presents only questions of law.

The circuit judge dismissed the petition for more than one reason. He was of opinion that the proposition to issue the bonds should have been submitted at a special election held on a day other than the day on which the general election was held; that each proposition required a two-thirds favorable vote instead of a majority only; that the Act of 1896 (sec. 4748b, Ky. Sts. 1909), providing for a bond issue to purchase privately owned turnpikes had been repealed by the Act of 1914 (sec. 4356s, Ky. Sts. 1915); and that mandamus was not the proper remedy.

1. Section 148 of the Constitution provides for not more than one election, in each year, to be held on the first Tuesday after the first Monday in November, except as otherwise provided in the Constitution.

Section 157a of the Constitution authorizes the issuance of bonds for the construction of public roads and bridges, provided the indebtedness is approved by the voters of the county at a special election held for that purpose "in such manner as may be provided by law."

Section 4307 of the Kentucky Statutes, enacted for the purpose of carrying section 157a of the Constitution into effect, reads as follows:

"The fiscal court shall have the power and authority to issue and sell bonds from time to time within the constitutional limitations for the purpose of building, constructing and reconstructing public roads and bridges, said bonds to bear interest not to exceed five per cent per annum, with coupons attached, payable semi-annually, these bonds to be in denominations of not less than one hundred dollars or more than one thousand dollars, to run not less than five nor more than thirty years, and to be redeemed within that time at

the pleasure of the court, and to be sold at not less than par value and accrued interest. Before the bonds authorized under this act shall be issued, the county court of the county, upon the petition of one hundred and fifty legal voters who are freeholders of the county, shall at the regular term thereof, after receiving said petition, make an order on his order book directing an election to be held in said county on some day named in said petition not earlier than sixty days after said application is lodged with the judge of said court, which order shall direct the sheriff of the county to advertise said election and the objects therefor at least thirty days next before the day thereof in some newspaper having the largest circulation in the county and also by printed hand bills posted up at not less than four public places in each voting precinct in the county and at the court house door. All legal voters of said county shall be privileged to vote at said election. The question, 'Are you in favor of issuing.............................................. in bonds for the purpose of building roads and bridges?' shall be printed on the ballot as provided for in the general election law, section 1459 Kentucky Statutes: Provided, however, that all the money raised by the sale of bonds shall be used solely and alone for the building, construction, or reconstruction of roads of asphaltum, concrete, brick, stone block, macadam, gravel or other processes of equal merit.''

It will be noticed that section 4307, *supra,* nowhere requires the special election to be held upon a day different from the general election day, although it does provide that the election shall be held not earlier than sixty days after the application therefor is lodged with the judge of the county court, and that it shall be advertised at least thirty days in a newspaper and by printed handbills. These are special provisions applicable to road-bond elections, which are not held annually or at stated times fixed by law, but only when specially ordered or called.

In 15 Cyc. 279, a special election is defined as follows:

''A special election is an election held to supply a vacancy in office occurring before the expiration of the full term for which the incumbent was elected, or an election at which some question or proposition is submitted to the vote of the qualified electors.''

It would seem, from this, that holding the election on a day different from the regular election day is not one of the essentials of a special election. When, therefore, section 157a of the Constitution provided that the vote upon a road-bond issue should be taken at a special election, held in such manner as may be provided by law, and the law upon the subject does not require the election to be held upon a day different from the general election day, it follows that the special election may be held upon the general election day. It is, nevertheless, a special election, because it has been specially called for the purpose of voting upon a proposition specially submitted. And, we see no reason why the proposition submitted should not be printed upon the ballot used in the general election held upon the same day.

The late case of Cleary v. Pieper, 169 Ky. 434, is in accord with this view. See also Walsh v. Asher, Judge, 163 Ky. 379.

It will be seen, therefore, that a special election under section 157a of the Constitution for the purpose of issuing bonds for the construction of roads and bridges, may be held upon the same day as the general election is held.

2. Still confining ourselves to the consideration of the proposition to issue bonds for the construction of roads and bridges under section 157a of the Constitution, it becomes unnecessary, in view of the late decisions of this court in Gatton v. Fiscal Court of Daviess County, 169 Ky. 425; Armstrong v. Fiscal Court of Carter County, 169 Ky. 433, and Cleary v. Pieper, 169 Ky. 434, decided since this case was decided in the circuit court, to again discuss the question here suggested, that to carry, the proposition required an affirmative vote of two-thirds of the electors participating in the election upon that question. Those cases expressly decided that under section 157a of the Constitution, an indebtedness for public road purposes may be authorized by a majority of the voters of a county who participate in an election upon that question.

3. Passing now to the consideration of the proposition to issue bonds for the purchase of the privately owned turnpikes of the county, our attention is called to section 89 (Ky. Sts. 1915, sec. 4356s), of chapter 80 of the Acts of 1914, which attempts to repeal, along with

other laws, section 4748b of the Kentucky Statutes (1909), which is the act of 1896 authorizing a county to issue bonds for the purpose of buying privately owned turnpikes.

It is contended, however, that section 89 of the Act of 1914 (Ky. Sts. 1915, 4356s), was ineffectual to repeal the Act of 1896 (Ky. Sts. 1909, 4748b), because the purpose to repeal the Act of 1896 was not expressed in the title of the act of 1914, as is required by section 51 of the Constitution, which provides that no law shall relate to more than one subject, and that shall be expressed in the title. The act of 1914 (Ky. Sts. 1915, sections 4287 to 4356s), is entitled, "An act defining public roads; providing for their establishment, regulation, use and maintenance; and creating the office of county road engineer, and prescribing the duties thereof." It is true that section 89 of this act (sec. 4356s Ky. Sts. 1915), attempts to repeal the Act of 1896 (Ky. Sts. 1909, sec. 4748b), authorizing counties to purchase turnpikes and issue bonds therefor; but as those subjects have no connection with the title of the act of 1914, it is clear that the repealing section, to this extent, is invalid.

In Exall v. Holland, 166 Ky. 315, it was held that the statutes relating to private passways were not repealed by the express attempt of section 89 of the act of 1914 (Ky. Sts. 1915, 4356s), *supra*, to do so, as the title of that act relates to public roads, and referred in no way to private passways.

Likewise, in Burton v. Monticello & Burnside Turnpike Co., 162 Ky. 787, the court had under consideration the validity of sections 39 and 40 of chapter 110 of the Acts of 1912 (Acts 1912, p. 309), entitled, "An act defining public roads—providing for their establishment, regulation and construction and use and maintenance—creating the office of road engineer, and prescribing the duties thereof." Said sections 39 and 40 related to the construction of turnpikes owned by individuals or corporations, and prescribed the tolls to be charged for their use.

In condemning sections 39 and 40, this court said:

"While the many sections of the act which treat of public roads and county road engineers are germane to the subject matter of the title, it is plain beyond question that sections 39 and 40, which relate to the collec-

tion of tolls upon turnpikes, individually owned, and prescribe the specifications for such turnpikes, have not the remotest connection with the subjects mentioned in the title of the act. There is not a word in the title from which any person could infer that the act contained the subject matter of sections 39 and 40, relating to the construction of turnpikes owned by individuals and corporations, and the tolls to be charged for their use.''

While this court has repeatedly announced that no provision of a statute, directly or indirectly relating to the subject expressed in the title, having a natural connection therewith, and not foreign to the same, will be condemned as being within the inhibition of section 51 of the Constitution, in no instance has this rule been extended so as to legalize legislation that departs so radically from the title of the act as the section here under consideration. Hyser v. Commonwealth, 116 Ky. 410; Thompson v. Commonwealth, 159 Ky. 12, and the cases cited in 162 Ky. 792.

The purpose of section 51 of the Constitution being to enable persons reading the title of an act to get a general idea of what the act treated of or contained, and to gather therefrom, in a general way at least, the subject-matter of the act, it cannot be said that the title of the act of 1914 advised any member voting thereon that its purpose was to repeal the act of 1896, relating to the acquisition of privately owned turnpikes. The act of 1896 was an important act to the people of Kentucky, and it should not be wiped off the statute book by an act which treated of an entirely different subject, and whose title gave no intimation that it intended to repeal the statute authorizing counties to provide free turnpikes.

It follows that the act of 1896 (Ky. Sts. 1909, 4748b), authorizing the acquisition, by counties, of privately owned turnpikes, was not repealed by the act of 1914, and is still in full force and effect. Campbell county, therefore, had authority to issue bonds to free the pikes of the county, provided the proper steps were taken under the statute.

4. The proposition to issue bonds of the par value of $150,000.00 for the purpose of acquiring all of the privately owned turnpikes of the county, received a majority of the votes cast upon that question, but it

did not receive two-thirds of the votes so cast; and, it is insisted that the rule above applied under section 157a of the Constitution, requiring only a majority of the electors voting upon a proposition, applies to that question. To this proposition we cannot agree.

Section 157a of the Constitution applies only to the construction and erection of public roads and bridges; it has no application to, and makes no provision for, the acquisition by purchase, or otherwise, of privately owned turnpikes for the purpose of making them free to the public. That power was granted by the act of 1896, which constituted section 4748b of Carroll's Kentucky Statutes of 1909. That act authorized a county to issue bonds for the purchase of the privately owned turnpikes and gravel roads of the county, whenever two-thirds of the legal voters voting on that proposition, voted in favor of the bonds. It was so expressly provided by sub-section 9 of the act; while sub-section 10 further authorized the fiscal court to levy a tax not to exceed twenty-five cents on every one hundred dollars' worth of taxable property for the purpose of paying the interest and principal of the bonds, and to keep the roads in repair. The act of 1896 constitutes the only authority for the purchase of privately owned turnpikes and the issuance of bonds to pay for them. They can be bought and bonds issued to pay for them only by following the requirements of that statute. It was not competent for the county to proceed partly under the act of 1896, which relates solely to the buying of privately owned turnpikes by the county, and partly under section 157a of the Constitution, which relates entirely to another subject—that of constructing public roads and bridges by the county.

Furthermore, section 157a of the Constitution restricts the county tax levy for public road purposes to twenty cents on each one hundred dollars of the assessed valuation of the county; and, when a tax of that amount has been once levied, the power of the county to levy taxes under section 157a is exhausted; it cannot levy an additional tax, of any amount, to pay the debt and interest of a second or subsequently voted bond indebtedness.

Under section 157a the tax levy may, at any time, be as high as twenty cents; at no time can it exceed that rate.

Under the contention here made, the county could levy a tax of twenty cents for the construction of public roads and bridges, and it could also make a further levy of twenty-five cents for the purchase of privately owned turnpikes and gravel roads, and both under section 157a of the Constitution. This cannot be done. In every case there must be some constitutional or statutory authority to justify the imposition of a tax.

So, in Mitchell v. Knox Fiscal Court, 165 Ky. 543, it was held that section 4308 of the Kentucky Statutes, which authorized the fiscal court of a county to levy a tax not exceeding thirty cents on each $100.00 of taxable property to pay the interest and principal of county road bonds, violated section 157a of the Constitution to the extent that it authorized a levy of tax exceeding twenty cents on each $100.00 of the taxable property, but that it was a valid statute to the extent that it levied, for the purpose indicated, a tax to an amount not exceeding twenty cents on each $100.00 of the taxable property, as provided by section 157a of the Constitution. See also Cleary v. Pieper, 169 Ky. 435.

In the Mitchell case, however, it was further held that while section 157a of the Constitution authorized a county to levy an additional tax of only twenty cents upon each $100.00 of taxable property in the county for the purposes of paying the interest and principal of county road bonds, a county may supplement this tax by setting aside, for that purpose, any part of the ordinary county tax of fifty cents levied upon each $100.00 of taxable property, for general purposes.

It follows that the proposition to issue bonds for the purchase of the privately owned turnpikes of the county did not prevail, because it failed to receive the assent of two-thirds of the legal voters who voted on that proposition, as is required by sub-section 9 of the act of 1896. Whaley v. Commonwealth, 110 Ky. 154.

5. The circuit judge was further of the opinion that under section 157a of the Constitution, and section 4307 of the Kentucky Statutes, enacted to carry the constitutional provision into effect, the fiscal court had a discretion as to whether it would issue bonds, even though it had been authorized so to do by a vote of the people; and, consequently, that mandamus did not lie.

It is well settled that mandamus will not lie to control or review the exercise of the discretion of any

court, board or officer, when the act complained of is either judicial, or *quasi*-judicial; but, when a duty is mandatory, and no discretion is vested, its performance and manner of performance both may be compelled by mandamus. In other words, mandamus lies to compel the performance of a merely ministerial duty.

And, while there is some conflict of opinion as to what constitutes a ministerial duty as distinguished from a discretionary duty, the distinction between merely ministerial and judicial and other official acts seems to be that, where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; and the fact that certain incidents and details of the duty are discretionary, is no objection to starting performance of the duty itself. 26 Cyc. Civil Code, sec. 474; Maddox v. Graham, 2 Met. 56; Gay v. Haggard, Road Supervisor, 133 Ky. 426; Christian-Todd Tel. Co. v. Com., 156 Ky. 565.

By referring to section 157a of the Constitution, it will be seen that any county may be permitted to incur an indebtedness not in excess of five per cent of the value of the taxable property therein, for public road purposes, and that it may levy a special tax not exceeding twenty cents, to pay such indebtedness.

And, under section 4307 of the Kentucky Statutes, enacted to carry the constitutional provision into effect, the fiscal court shall have the power and authority to issue and sell bonds, within the constitutional limitations, for the purpose of constructing public roads and bridges in order to carry out the will of the people of the county as expressed upon that subject.

But certainly it was not intended, either by the language of the constitutional provision, or by the language of the statute, above referred to, that the fiscal court might defeat the will of the people solemnly declared in an election held for that purpose. When the indebtedness has been duly authorized in the manner prescribed by the Constitution and the statute, it becomes the duty of the fiscal court to issue the bonds in the way provided by the statute; it has no discretion in the matter, except as to certain details of that duty, which, as above pointed out, constitute no objection to starting performance of the duty itself. In such a case mandamus lies. Cleary v. Pieper, 169 Ky. 435.

Our conclusion, therefore, is, that the fiscal court of Campbell county was authorized and empowered to issue the bonds for public road purposes, but that it was not authorized to issue the bonds for the purchase of the privately owned turnpikes of the county.

Judgment reversed, with instructions to the circuit court to enter a judgment conforming to this opinion.