## Bingham v. Johnson.

(Decided February 14, 1922.)

## Appeal from Knox Circuit Court.

1. Elections—Certificate.—A certificate of election makes a prima facie case for the holder, that he was elected to the office, and to overcome this presumption facts must be pleaded and shown, which show that the certificate should not as a matter of fact have been granted.

2. Elections—Voting for Person Whose Name Not on Ballot.—Votes attempted to be cast for a person, whose name is not printed upon the ballot, by the voter using a rubber stamp, containing the person's name and a cross (x) at the end of the name, instead of voting in the manner prescribed in the statute, in such cases, are illegal and should not be counted.

3. Statutes—Subjects and Titles of Acts—Elections.—Section 1565b-4, Kentucky Statutes, which is chapter 81, Session Acts, 1918, is void, because enacted contrary to the provisions of section 51 of the Constitution and leaves in force subsection 4 of chapter 13, Session Acts, 1916.

4. Elections—Pre-Election Expense Statement.—Subsection 4 of chapter 13, Session Acts, 1916, so far as it requires a pre-election expense statement, does not have application to one, who is not a candidate for fifteen days previous to the election.

5. Elections—Candidate Whose Name Not Printed on Ballot—Application of Act.—Subsection 4 of chapter 13, Session Acts, 1916, applies to a condidate before final election, whose name is not printed upon the ballots, and who has not been nominated by any party action, nor made a candidate by petitioners as provided by section 1453, Kentucky Statutes, as well as to candidates whose names are printed upon the ballots.

JAS. D. BLACK, H. H. OWENS and J. J. TYE for appellant.

R. N. JARVIS and V. A. JORDAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Reversing.

The appellant and appellee were rival candidates for justice of the peace. Johnson was the nominee of the Republican party. He received his nomination in the regular primary election. Bingham was not nominated by any party, nor by petitioners, under section 1453, Kentucky Statutes, and his name was not printed upon the ballots as a candidate. He depended upon the voters, who desired to support him, to write his name in the blank space left upon the official ballot for that purpose,

and stenciling a cross in the square after his name. The officers of the election and the election commissioners of the county certified that Bingham had been elected by receiving a majority of the votes cast, and awarded him the certificate of election.

Johnson in due time instituted an action against Bingham, contesting his election. The action was filed on November 19, 1921. On November 29th the contestee, Bingham, filed a motion to strike out certain parts of the petition. On the same day he entered a motion to require contestant to make more definite and certain the portions of the petition which he had moved to have stricken out. On the same day, without waiving these motions, he filed a general demurrer to the petition, and on December 8th following, without waiving either motions or demurrer, he filed an answer. On December 12th he filed an amended answer over the objections of the contestant. On the same day contestant filed a general demurrer to the amended answer, and then over contestee's objection was permitted to file an amended petition, and to it contestee interposed a general demurrer. On December 13th the motion of contestee to make the petition more definite and certain was sustained, but neither party seems ever to have requested any ruling of the court upon the demurrers offered by them, nor upon the other motion of the contestee, and without objection from either party the action was submitted for trial and judgment upon the pleadings, and the court adjudged that Bingham had received a majority of the votes cast for the office at the election and was duly elected, but had failed to file a pre-election expense statement, and for that reason was ineligible to qualify or to hold the office. It was, also, adjudged that although Bingham failed to file a pre-election expense statement and his election was therefore void, it was, also, adjudged that Johnson was not elected nor entitled to qualify or to hold the office, because he had failed to receive a majority of the votes at the election. The action is here now upon an appeal from the judgment by Bingham, and upon a cross appeal of Johnson.

The first question to be determined is whether the judgment of the court holding that Bingham was duly elected to the office was sound. As before stated, no evidence was taken or heard upon the issue, and the judgment must rest entirely upon the averments and denials

of the pleadings. The contestant in the petition and contestee in the answer, each, aver, that the contestee received a majority of the votes cast at the election, and that the election commissioners awarded to him a certificate of election. The certificte of election made for the contestee a *prima facie case,* that he was duly elected, and the presumption must then be indulged that the officers of the election, including the election commissioners, did their duty and that the votes counted as being cast for Bingham were legal votes and were legally cast and counted. Bailey v. Hurst, 24 K. L. R. 504. These presumptions, of course, may be overcome by the facts, and to overcome the presumption, the contestant must plead facts, which show that he received a majority of the legal votes cast instead of the contestee, who received the certificate of election. Although the contestant filed a petition, and after that an amended petition, he does not allege that he received as many as one vote. There is no allegation anywhere in the pleadings as to the number of votes cast for contestee, or tabulated for either the contestant or contestee, nor how many votes were received by either, nor how many illegal votes were attempted to be cast or counted for either. Contestant in his petition and amended petition devotes himself entirely to an attack upon the legality of the votes received by the contestee, and failed to allege that he received any votes at all. The nearest approach that the contestant makes to alleging that he received any votes is that in his amended petition he states ''that he was duly elected to said office'' which is a statement of a mere conclusion. Hence, the contestant does not allege any fact which could overthrow in his favor the presumption arising from the certificate of election, or upon which the court could adjudge that he was elected to the office. He, however, prays that if he cannot be adjudged to be elected, it should be adjudged that no election was had, and that the office was vacant, and as a basis for adjudging that the contestee was not elected, he alleges that the contestee procured a stamp to be made upon the face of which was his name, and after his name a cross (x), and that instead of the voter writing contestee's name upon the blank space left for the purpose of writing the name of a candidate for justice of the peace, whose name was not printed upon the ballot, and then with the stencil provided in the booth

making a cross (x) in the square at the end of the name, as provided by section 1471, Kentucky Statutes, the voter could with this rubber stamp, stamp the name of contestee in the space, and, also, make the cross (x) in the square at the end of the stamped name, at the same time, and that he furnished one of these rubber stamps at each of the polling places, and that all votes received by contestee and counted for him were votes attempted to be cast for him by the use of the rubber stamp, and that such were illegal and should not have been counted. It was, also, alleged that in attempting to vote by the use of the rubber stamp, many voters stamped the name of contestee and the cross (x) at various places upon the ballot, and not in the space designated for that purpose, and therefore should not have been counted as valid votes, even if it were held that a legal vote could be cast by the use of such a stamp, and asked that the ballot boxes be opened and the number of such voters be ascertained. Of course, it would have been impossible for the contestant to have given the names of the voters, or the number of votes which, if any, were counted for contestee, and which were attempted to be voted by stamping his name at a place other than it was necessary to write the contestee's name, in order to vote for him for justice of the peace, but the conclusion, at which we have arrived, renders the failure to open the ballot boxes and ascertain from the ballots the number of votes counted for contestee, if any, where his name was not stamped in the proper place upon the ballots, to be unnecessary, since none of the votes, if any, that were counted for contestee, which were attempted to be cast by the use of the rubber stamp, were valid or legal votes, whether the name and cross (x) were stamped in the proper space and square, or elsewhere upon the ballots. Where a voter desires to cast a vote for a person, whose name is not printed upon the ballot, the legislature has prescribed a specific way in which he shall do so. Section 1471, Kentucky Statutes, so far as pertinent to the question under discussion, provides as follows:

"Nothing in this law contained shall be so construed as to prevent a voter from voting for any qualified person, other than those whose names are printed on the ballots, for any office to be filled, by writing with black lead pencil, under the designation of the office, the name of such person and placing to the right of such name a

(x) mark. All marking upon ballots shall be made with black ink stencil. There shall be kept in each booth the necessary stencils and pencils to be securely fastened by a string or cord of sufficient length to enable voters to use the same.'' If the foregoing statute should be construed with any degree of strictness, the contention that the votes attempted to be cast by the use of the stamp furnished by the contestee, would be put at rest. This statute, also, provides that ''no ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice.'' In accordance with the latter provision, where a candidate's name is printed upon the ballot, although the statute provides that a cross (x) shall be made with the stencil in the square opposite the candidate's name as the indication that the voter desires to vote for that candidate, or in case of a party device, in the circle under the device, and at the head of the column under which are the candidates of that party a cross (x) shall be made with the stencil as indicating the voter's desire to vote for all the candidates of that party, a round spot as if made by the butt end of the stencil or a cross (x) mark by a black lead pencil, or any colored pencil, has been held to be a substantial compliance with the statute, where it appears that the marks with the butt end of the stencil or with the pencil were in good faith, and not with the design on the part of the voter to put a mark upon his ballot by which it could be distinguished who the voter was that cast the vote. Pettit v. Powell, 113 Ky. 777; Bates v. Crumbaugh, 114 Ky. 447; Houston v. Steele, 98 Ky. 596. It will be observed that in the above cited cases the names of the candidates voted for were upon the ballots, and the number of ballots where the cross (x) was made with a pencil, or the butt end of a stencil were very negligible, and were attempts to carry out the method of voting prescribed by the statute, and appeared to have been only the result of inadvertence or mistake, but quite another condition would have arisen if the use of the stencil had been entirely discarded, and quite a different condition arises where the law prescribes specifically the manner of voting for one whose name is not on the ballot, and an entirely different method is attempted to be substituted. Upon the other hand, it has been held that where a candidate's name has not been printed upon the ballot, under the device of a party, because he had not been nom-

inated by that party, or his name authorized to be put
on the ballot by the proper officials of the party, or was
not entitled to be printed as provided in section 1453 of
Kentucky Statutes, if some one wrote the candidate's
name upon the ballot under the column containing the
candidates of the party at the head of which was the
device of the party, that a vote by making the cross (x)
in the circle under the device of the party was not a vote
for such candidate, although his name was written under
the designation of the office for which he was a candidate,
and the same principle has been adhered to, where the
name of such person was printed upon a "paster" and
pasted upon the ballot, either by an officer of the election
or by the voter himself, in a state of case where a
"paster" was not authorized by law to be used, it was
held that the vote was not a valid one and should not be
counted for the candidate's name printed upon the paster.
Edwards v. Loy, 113 Ky. 746; Parrish v. Powers, 127
Ky. 164, and Chappell v. Colson, 189 Ky. 102. The
ground of holding the invalidity of such votes is that the
writing the name or pasting it upon the ballots was unau-
thorized, and not done by a legal authority, and hence,
the name being illegally upon the ballots, that a vote
apparently cast for such a candidate would be obtained
by a mere trick, which cannot be tolerated. In the late
case of Chappell v. Colson, 189 Ky. 102, the friends of a
candidate, whose name was not printed upon the ballots
and who was not entitled by law to have his name pasted
upon the ballots by the election officers, procured voters,
who expressed a desire to vote for him, to take a
"paster" containing the name of the candidate with
them into the booth, and to paste same upon the ballot
where the name could have been lawfully written by the
voter, and then to place the cross (x) with the stencil in
the square following his name, but this method was held
to be illegal, and that all such ballots were illegal and
should not have been counted. In commenting upon sec-
tion 1471, *supra,* in that case, the court said:

"As the foregoing provisions of the statute, *supra,*
prescribed a particular method of voting by secret ballot,
for a person whose name is not printed on the ballot,
such method must be observed by the voter, and any
other manner of voting that may be resorted to by the lat-
ter in the use of the ballot, whether directed by others or
adopted of his own volition, will render it invalid." The

legislature selected and ordained the manner of voting for one whose name is not printed upon the ballot and doubtless had sufficient reasons for so doing, and a method practiced which is not in substantial compliance with the method prescribed, renders the vote invalid. In the use of the rubber stamp, in the instant case, every provision of the statute was ignored, and an innovation was introduced which destroyed in a manner the secrecy of the ballot, in as much as every one who took the stamp into the booth gave notice of how he intended to vote. We do not feel authorized to extend the meaning of the rule that no vote shall be rejected where the intention of the voter can be ascertained, to a method of voting entirely contrary to that prescribed by law, and that section of the statute, of course, means that the intention of the voter must be ascertained from his attempt to carry out the method prescribed by law, but has done so defectively.

The contestee in his answer denied that all the votes that were cast and counted for him were by the use of the rubber stamp or that was the manner, used exclusively, by all those voting for him, and he further denied that he did not receive votes which were cast for him by writing his name in the proper place with a black lead pencil and making a cross (x) in the square opposite his name with the stencil provided for voting. Hence, in the absence of evidence it must be concluded that contestee received votes which were cast for him in the manner prescribed by the statute, and as the contestant fails to allege or show that he received any votes, the judgment of the court that contestee was elected to the offic, was not erroneous.

The ground of contest which the court sustained, was that contestee did not file a pre-election expense statement, as required by the Corrupt Practice Act. In the petition it is averred that the contestee became a candidate "a few days before the election," but in the amended petition it was averred that contestee was a candidate more than ten days before the election. The amended petition could be properly filed as it was an attempted amendment of a ground of contest set out in the petition in a defective manner. Francis v. Sturgill, 163 Ky. 650; Wilson v. Hines, 90 Ky. 221; Phillips v. Ratliff, 134 Ky. 704; Johnson v. Little, 176 Ky. 505. A failure to comply with the Corrupt Practice Act is made a ground of contest by the provisions of that statute. Sec-

tion 11, chapter 13, Session Acts, 1916. The answer admitted that the contestee did not file a pre-election expense statement, but averred the filing of a post-election statement in which were included all of his expenses previous to the election as well as those thereafter, and he failed to deny that he was a candidate for more than ten days previous to the election. His demurrer to the amended petition was never acted upon by the court, but it was waived when contestee submitted to the submission of the action upon its merits, and having failed to request that the demurrer be passed upon and, hence, it must be adjudged from the pleadings that contestee was a candidate for more than ten days before the election, or at least eleven days. The averment that contestee was a candidate for more than ten days before the election was made evidently to support a cause of action, under the amendment to subsection 4 of chapter 13, Session Acts, 1916, which is chapter 81, Session Acts, 1918, and now stands in the Kentucky Statutes as section 1565b-4, and which provides that a candidate must file the pre-election expense statement between the tenth and fifteenth days before the final election. If the latter act is valid, according to the principle adopted by this court in Sparkman v. Saylor, 180 Ky. 263 and McKinney v. Barker, 180 Ky. 506, the failure of contestee to file a pre-election expense statement would be fatal to his election, and the judgment of the circuit court would have to be affirmed. In the former case it was held that the requirements of subsection 4, chapter 13, Session Acts, 1916, relating to the filing of a pre-election expense statement was mandatory.

The statute required the filing of such a statement on the fifteenth day preceding the final election, and it was held that the provisions of the statute, as to the time of filing, were only directory, but that it must be reasonably and substantially complied with. The contestee, however, insists that the latter act as amended by the amendment of 1918, and which is now section 1565b-4, Kentucky Statutes, does not apply to him, since that statute only applies to candidates, who are nominated by party action and therefore, whose names are printed upon the ballots, and not to candidates who are not nominated by any caucus, convention or primary election, and whose names are not upon the ballots. If the amendment of 1918 was valid and in force, it is probable the contention would be

correct, but it was clearly enacted contrary to the provisions of section 51 of the Constitution, and is invalid, and, hence, subsection 4, chapter 13, Session Acts, 1916, was at the time of the election in 1921 in force and its provisions must be appealed to to determine the rights of the parties. The title to the amendment of 1918 is as follows:

"An act to amend subsection 4, chapter 13 of the acts of the General Assembly of 1916, relating to corrupt practices, by inserting after the word 'on' at the end of line four of said subsection the words 'or before,' and by inserting after the word 'on' in line six of said subsection the words 'or before' so that said subsection when amended shall read as follows." So the subject of this amendatory act was to amend subsection 4 of chapter 13, Session Acts, 1916, by inserting the words "or before" after two certain specific words in specific lines of that act. The legislature made the title so restrictive that the act could not contain any provision of any kind, and could only contain an act like the original section, except the insertion of the words above designated. The act which followed this title did not, after the word "on" at the end of line four, insert the words "or before," nor did it, after the word "on" in line six, insert the words "or before," but left out of it the word "on" at each of the designated places, and did not insert the words "or before" at any place, but enacted that the pre-election expense statement should be filed between the tenth and fifteenth day before the making of the nomination, and between the tenth and fifteenth days before the final election, and in place of the amendatory act containing the words "or any final election, etc.," it left out the word "or" and inserted in its place the word "before" which entirely changed the candidates to whom the original act applied. Hence, the title of this act related to one subject to a designated restrictive degree, and the act itself contained the provision between the tenth and fifteenth day, and other provisions which the title was too restrictive to cover or embrace. It is very easy to see that the title as published would give no notice of any kind to any one of the changes made in the act which the amendatory act provided, and would, in fact, prevent any one from anticipating that the act itself would include any such provisions. This court has oftentimes held that the title to an act might be so

restrictive as to not cover or embrace a provision in the
act which a more general title would have embraced.
Henderson Bridge Co. v. Alves, 122 Ky. 46; Board of
Trustees v. Tate, 155 Ky. 296; Board of Penitentiary
Commissioners v. Spencer, 159 Ky. 255; Burton v.
Monticello Turnpike Co., 162 Ky. 787; Bosworth, Audi-
tor, v. State University, 166 Ky. 436; Houston v. Boltz,
169 Ky. 640; Ogden v. Cronan, 171 Ky. 254; South v.
Fish, 181 Ky. 349; District Board, etc. v. Bradley, 188
Ky. 426. Subsection 4 of chapter 13, Session Acts of
1916, which is left in force and unaffected by the at-
tempted amendment, provided that any candidate, at a
final election, must file his pre-election expense statement
on the fifteenth day before the election. No reason is per-
ceptible why this provision would not apply to a candi-
date who chooses to be one without nomination of a
caucus, convention or primary election, or who chooses
not to have his name printed upon the ballot, at the re-
quest of petitioners, as provided in section 1453, Ken-
tucky Statutes, should not be required to file a pre-elec-
tion expense statement, as well as a candidate whose
name is upon the ballot. But the statute was evidently
intended to apply to a candidate who was such at least
fifteen days previous to the final election, and not to one
who thereafter became a candidate. If such statute
should apply to a candidate who became such less than
fifteen days before the final election, a person desiring
to become such would be entirely precluded, because it
would be impossible for him to comply literally with the
statute, and such we do not think was the intention of
the General Assembly, as it authorized voters to legally
vote for any person they choose, and from the further
fact that the legislature would be without power to ex-
clude any eligible person as a candidate, although it
might exclude such from using the machinery provided
for obtaining a place upon the ballot, without compliance
on his part with the requirements. Although it was held
in Sparkman v. Saylor, *supra*, that the election of a can-
didate should not be held void if he substantially and
reasonably complied with the requirement to file a pre-
election expense statement, and if he failed to do so on
the fifteenth day before the election, might if the circum-
stances justified file one at a later date, but it is not con-
ceivable that the legislature intended that the law should
apply to a candidate who could not comply literally, and

after all it is conceived that the intention of the legislature was that the act so far as it requires a pre-election statement, applies only to one who was a candidate on the fifteenth day before the election, and that it was intended that he should file his pre-election expense statement on that day in the absence of any untoward circumstance occurring.

The fact as gathered from the pleadings is, the contestee was not a candidate for fifteen days previous to the election, and his election was not void on account of his failure to file a pre-election expense statement, and the law was fulfilled as to him when he filed the post-election statement embracing all of his expenditures.

The judgment is therefore reversed upon the appeal of contestee, so far as it was held that his election was void from the failure to file a pre-election expense statement, and is affirmed upon the cross appeal and cause remanded with directions to enter a judgment in conformity with this opinion.

The whole court sititng.